*434 OPINION of the Court, by
Judge Owsley.
— Ik 1 TbO, Camron and Warford entered into a written contract, by which Camron undertook to locate for War-ford l2t)0 acres of land ; and Warford to convey, ia one convenient arid entire tract, 600 acres of the same to Camron, Camron located the land in three different tracts, one of 200, one of 400, and a third of 600 acres, and exhibited his bill in equity for a conveyance to 600 acres, according to Warford’s agreement. Warford by his answer to the bill admits the execution of the written agreement, but allege* Camron at the time promised to locate first rate laud, aud charges he has failed to comply with his promise, and has located third rata land. Camron then filed an amended bill, in which he charges Warford has sold the 200' acre tract, 400 acres of the 600 acre tract, and 200 acres of the 400 acra tract; and pravs for such a decree as may be consistent with equity. Warford by his answer to the amended bill admits the sale of the 200 acre tract, and 400 acres of the 600 acre tract, and makes no answer to the charge of sale as to the other tract.
The court on a hearing being of opinion Warford by selling the land had placed it out of his power to comply with his contract with Camron, decreed a jury should *435 ^ascertain its value at the date when Warford conveyed .the land to others, if the deeds were produced by War-ford ; but if not, its value at the taking the inquest. Before the jury, Warford offered to shew by the production of title papers, interfering claims to the land, and to prove the value of the land with reference to such interferences, Thisinquirv was opposed by Cam-ron and refused by the court. After the verdict of the jury, Warford moved to set aside the interlocutory decree, but his motion was overruled by the court and a final decree pronounced m favor of Camron for the va-Jus of the land as assessed by the jury* From this decree Warford has prosecuted this writ of error-
Although the conplainanrhai a ri^br éleéfc to t^ke the 200 acres, unfold, ¾ damages for the refid ue, vet ihe de'endanr had no right to infift that the complainant lh uld accept a partial performance •
Upon the con* trail C was not entitled to a neral warranty 5 and evidence of interfering claims was proper evidence to be fub.mítted to the jury upoqi the question nf quantum damni* Jicatus
Upon an in* queft of damages directed bjr the chancellor, parol- evidence isadmiflib!e,& title papers re-fpe&ing adver-faryclaims were alfo admifliblc*
To this decree it is objected that the court erred ip decreeing compensation for the whole 6Q0 acres agreed to be conveyed by Warford, It will not be denied that .a bill in equity framed exclusively for compensation in damages for a breach of covenant, could not be maintained ; but it is equally clear that the specific execution »f contracts forms one of the principal and fundamental pillars of equitable jurisdiction. And it is manifest the original biii in this case was brought for the special purpose of compelling the specific execution of the contract with Warford. It is true by the amendment to -Camron’s bill, he appears to have ascertained Warford Jiad sold part of the land, and suggested additional allegations changing materially the features of the cause in relation to the decree necessary to be made. But as equity had jurisdiction of the subject matter of the original bill, for the purpose of carrying into effect the contract, the discovery of facts changing the nature of the relief, and suggested by an amendment to the bill, should not tend to exclude the jurisdiction which in the first instance properly attached, but the cause should be retained for the purpose of giving relief according to the equitable circumstances of the case. Tf, therefore, under the circumstances of this case, Camron is equitably entitled to compensation for the whole 600 acres, according to the valuation made by the jury, the decree must be affirmed. That he is entitled to compensation, we think abundantly evident. The evidence satisfactorily proves a performance by Camron of his part of the contract: for although Warford has alleged a promise by ■Camron to locate first rate land, and has made some ef *436 fort to prove .a negligent and improper execution of the • contract on his part, it may be observed that no evir dence of such a promise has been produced ; and the evidence in the cause does not exhibit such a degree of negligence on the part of Camron as to preclude his right to relief in a court of equity. But, on the contrary, it is manifest by the admissions in W trford’s answer to part of the allegations of Camron’s bill, and his evasive answer to other allegations, that Warlord has sold the 20Q acre tract, 400 acres of the 600 acre tract, and 200 acres of the 400 aere tract located bv Camron. Whatever, therefore, may be the true construction of, the agreement of Warford to convey, it is evident he cannot comply therewith : for if he was bound to convey a moiety of each tract, his having sold the 200 acre tract and 400 acres of the 600 acre tract, disables him from performing his contract; or if, as we suppose the more correct construction, Warford was bound to convey the 600 acre tract, it is evident that after selling a part to others, he cannot comply with his contract to Camron,
But it was objected in argument, that though War-ford may not be able to convey the 600 acres according to contract, for so much thereof as he'has title he should have been decreed to eohvey, and compensation for the residue. To this objection it may be answered, that a purchaser, though he may elect to take part oí a tract, where the vendor cannot convey the whole, and recover compensation for the residue, yet by no principle of law or rule of equity can he be compelled to take a title to part, where the vendor has voluntarily put it out of his power tq make a title to the whole. As, therefore, in this case, Warford has by his voluntary act rendered it impossible to perform his part of the contract, Camron has a right to compensation to the full value of the 600 acres which Warford was bound to convey.
It remains, therefore, to determine whether the court erred in not permitting Warford to give evidence to the jury of the interfering claims on the land, and its value with reference thereto, It is clear, from a sound construction of the contract, Camron was entitled to a special warranty deed only to the land ; and it is evident bad Warford conveyed the land according to contract, free from fraud, and an eviction had afterwards taken *437 place, under such a warranty he would not be liable to make any compensation to Camron. As then Camron by the contract was only equitably entitled to the land, subject to all incumbrances from adversary claims, it is plain the value of the land with reference to those claims, is the extent to which he has been injured in not obtaining a title. To the amount of this injury, and to that amount only, is Camron in this case entitled to compensation.
But it was urged in argument, the court'properly rejected the production of title papers and evidence to the jury to establish those interfering claims and the value, in as much as it would be introducing matter extraneous from the-record, not contemplated by the interlocutory order directing an inquest.
Were the introduction of parol evidence on making such inquests inadmissible, according to the correct chancery practice, the decision of the court in this case would have been • correct. But it is not only every day’s practice, but that practice has been recognized.by this court, to admit parol evidence on making such inquests. If then parol evidence was admissible to prove the value of the land without interfering claims, it is impossible to perceive a reason why the title papers of the adversary claims should not have been received as tending to the same end : for as the value with reference to those claims formed the rule of compensation ■when a jury was directed to ascertain the value, to enable them to do so, the production of those title papers, and parol evidence of value in relation thereto, became peculiarly necessary and proper.
We are therefore of opinion the court erred in rejecting the evidence offered by Watford. The decree must consequently be reversed, and the cause remanded to that court for further proceedings consistent with this opinion,